WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

B. OTIS FELDER #7834
Otis.Felder@wilsonelser.com
555 S. Flower Street, Suite 2900
Los Angeles, CA 90071
Tel: (213) 330-8844
Fax: (213) 443-5101

Attorneys for Plaintiffs
*CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,*
*Subscribing to Policy No. PSL0039560201*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Subscribing to Policy No. PSL0039560201, <br><br> Plaintiffs, <br><br> vs. <br><br> CR-DESIGN & CONSTRUCTION INC., and DOES 1 through 10, inclusive, <br><br> Defendants. | Civil No.   1:24-cv-578 <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF; CERTIFICATE OF SERVICE** |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

COME NOW Plaintiffs CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, subscribing to Policy No. PSL0039560201(hereinafter "Plaintiffs"), by

and through their undersigned attorneys, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP, and for their Complaint against Defendant CR-DESIGN & CONSTRUCTION, INC., a corporation, and DOES 1 through 10, inclusive (hereinafter collectively "Defendants"), for declaratory relief, recession, negligence, and other relief against Defendants, allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action seeking a declaration confirming rescission of a design professional services liability insurance policy issued to Defendants because of material misrepresentations, or concealment, or both, made in the insurance application, including but not limited to, the material misrepresentations, or concealments, or both, that Defendants applied for and/or sought after alleged malpractice had occurred and failed to disclose it and/or for liability that does not arise from the terms of the policy.

2.      In the alternative, to the extent the Court does not issue a declaration confirming rescission, Plaintiffs seek rescission of the design professional services liability insurance policy based upon material misrepresentations, or concealments, or both, made in the insurance application, including but not limited to, the material misrepresentations, or concealments, or both, that Defendants failed to disclose their alleged malpractice when responding to the application or as required to do under the terms of the policy.

3.      In the alternative, to the extent the Court does not declare the design professional services liability insurance policy rescinded or does not rescind the design professional services professional liability insurance policy *ab initio*, Plaintiffs plead in the alternative that Defendants were negligent in submitting the application for the design professional services liability insurance policy, negligently misrepresented information in the application for the design professional services

liability insurance policy or that Defendants fraudulently prepared and submitted the application, and/or failed to later disclose information relevant to the application.

4.     Plaintiffs also seek a declaration that they have no duty to defend or indemnify Defendants in an underlying dispute arising out Defendants' alleged legal malpractice and/or other actions not covered by the policy.

## PARTIES

5.     Plaintiffs currently are, and at all times mentioned herein, foreign surplus lines insurance carriers domiciled in and organized under the laws of the United Kingdom and outside of Hawaiʻi with their home offices and principal places of business in London, United Kingdom.  None of the Plaintiffs are citizens of Hawaiʻi.

6.     More specifically, Plaintiffs severally subscribing to the policy include various syndicates with Lloyd's, London, namely Lloyd's Syndicate 444 (CNP), Lloyd's Syndicate 2488 (CGM), Lloyd's Syndicate 1200 (WSM), Lloyd's Syndicate 3000 (MKL), Lloyd's Syndicate 5555 (QPS), Lloyd's Syndicate 1988 (CFC), Lloyd's Syndicate 4711 (ASP), and Zurich EU AF (UK).

7.     On information and belief, Defendant CR-DESIGN & CONSTRUCTION INC. is a Hawaiʻi profit corporation (No. 22910 D1) whose purpose is designated as general building and drafting, and which is organized under the laws of Hawaiʻi, having been registered there since July 19, 2020, and having its principal mailing address located at Post Office Box 1983, Lihue, Hawaiʻi, 96766, identifying Mr. Caven K. Raco as its principal, with an address at 1824 Haleukana Street, Lihue, Hawaiʻi, 96766.

8.     Defendants Does 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this Complaint by

inserting their true names and capacities herein. Plaintiffs are informed and believes and thereon alleges that each of the fictitiously named defendant have some interest in the insurance policy or the claim at issue.

9.    Each reference in this Complaint to "Defendant," "Defendants," or a specifically named Defendant refers also to all Defendants sued under fictitious names.

10.    Defendant CR-DESIGN & CONSTRUCTION INC., and Defendants Does 1 through 10, inclusive, are hereinafter collectively referred to as "Defendants" for all intents and purposes.

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 2201, et seq. and Fed.R.Civ.P, Rule 57, to resolve an actual controversy between the parties as set forth herein. There is complete diversity between the parties in that the Plaintiffs are all citizens of the United Kingdom in that their principal place of business is located there and none are citizens of Hawaiʻi and each of the Defendants is a citizen of the State of Hawaiʻi. The amount in controversy exceeds $75,000, exclusive of interest and costs, both in the aggregate and as to each individual syndicate's potential several liability noted above in subscribing to the policy.

12.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) in that all defendants are residents of the State of Hawaiʻi and at least one defendant resides in this jurisdictional district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) in that the events giving rise to the claims occurred within this judicial district.

## GENERAL FACTUAL ALLEGATIONS

13.    This is an action for declaratory relief confirming rescission, or in the alternative, total rescission of a design professional liability insurance policy, policy number PSL0039560201 (hereinafter "The Lloyd's Policy" or "The Policy"). As noted

above and further alleged, declaratory relief is sought due to material misrepresentations, concealments, or both made by Defendants, in a Contractors Professional Liability Application (hereinafter "Application") (A true and correct copy of the Application is attached hereto as Exhibit A) along with that the insurance does not apply to various claims made by Defendants.

14.    The material misrepresentations, or concealments, or both, by Defendants in the Application for design professional liability insurance policy entitle Plaintiffs to rescind The Lloyd's Policy issued to Defendants.  Alternatively, the terms of The Lloyd's Policy do not apply to claims tendered by Defendants.

### PRE-POLICY CLAIMS AGAINST DEFENDANTS

15.    On information and belief, in early 2017, Robert Yick, and his wife Laura Liu, began investigating a property on Kauai to build a house for retirement and acquired a vacant lot in May 2017.  By May 2018, they had engaged architect Mike McLychok, doing business as Tropical Architectural Group, to design their home. Architect McLychok also referred Mr. Yick to Craig Kawakami, who then referred them to Mr. Caven Raco, principal for and President of Defendant CR-DESIGN & CONSTRUCTION INC., to act as a general contractor for the project.  Based on discussions with Mr. Yick and Ms. Liu, Mr. Raco provided a proposed $1.3-1.4 Million budget for his work on May 31, 2019, which was later raised to $1.44 Million on August 14, 2019.  On January 16, 2020, Mr. Raco provided Mr. Yick and Ms. Liu a revised lump sum budget of app. $1.52 Million for the project, which they agreed to as they were pleased with Architect McLychok's plans for the home that Mr. Raco agreed to follow.

16.    On information and belief, on or about March 6, 2020, Mr. Yick also received a representation that Defendant CR-DESIGN & CONSTRUCTION INC., promoted itself as a "contractor capable of completing a Custom Build residential

home" and was able "to provide contractor services for the construction and improvements of" real property located at Aliomanu Estates, Unit C, Lot 9, for the lump sum of $1,519,450.05, broken down over five draws as working was completed (the "Yick Home Project").

17.    On information and belief, Mr. Yick signed a final contract with Defendant CR-DESIGN & CONSTRUCTION INC. for $1,519,450.05 on March 16, 2020, for the Yick Home Project.

18.    On information and belief, the Kauai Building Department approved the plans for the Yick Home Project on March 30, 2020.

19.    On information and belief, Defendant CR-DESIGN & CONSTRUCTION INC. obtained a construction bond from Island Insurance for the Yick Home Project before construction began.

20.     On information and belief, during the construction of the Yick Home Project, Mr. Yick asserted that Mr. Raco sent a Change Order attempting to make the windows smaller on February 25, 2021, to cut costs in choosing cheaper materials than what had been agreed to their contract. Other concerns developed regarding the stairs and the front door.

21.    On information and belief, Mr. Yick and his wife became further concerned about certain aspects of the Yick Home Project by April 2021, and by July 2021 they conveyed to Mr. Raco that they felt that he was not responding to their requests.

22.    On information and belief, Mr. Yick raised additional concerns with Mr. Raco in early 2022, who responded that his wife had been ill. By May 2022, Mr. Yick and Ms. Liu felt that the construction of their new home had not advanced and contended that from that visit until now, there has been little to no work done on the home.

23.     On information and belief, Mr. Yick asserts that numerous issues arose during construction, including but not limited to, (1) repeated requests for early draws despite work not meeting draw standards, (2) changing existing building materials and installation dimension requirements, (3) failure to arrange and pay subcontractors despite subcontractor allowances included in the Agreement, (4) failure to build per updated and approved building plans, (5) improper installation, (6) using cheaper materials in the build, and (7) numerous change order requests that materially altered aspects of the build.  He further asserted that Defendant CR-DESIGN & CONSTRUCTION INC. built from unapproved building plans, and outdated architectural sheets that did not reflect the updated conditions.

24.     On information and belief, Mr. Yick and Ms. Liu, or those acting on their behalf, had approximately nine meetings with the broker for Island Insurance in an attempt to resolve outstanding claims and disputes concerning the Yick Home Project and notified Island Insurance on August 11, 2022 that they were declaring a contractor default under the bond.

25.     In addition to the above-referenced claims involving the Yick Home Project, Plaintiffs, on information and belief, allege that Irene Taylor engaged Defendant CR-DESIGN & CONSTRUCTION INC. with respect to a new residence to be constructed on property located at 4892 Kua Road, Kalahea, Kauai ("Taylor Home Project), in which she conveyed in a letter dated April 15, 2018 that Defendant CR-DESIGN & CONSTRUCTION INC. failed to finish that project, breaching the terms of her contract with it.

/ / /

/ / /

/ / /

/ / /

## THE INSURANCE APPLICATION

26.    On or about September 29, 2022, Defendants through their insurance broker, submitted the Application (a true and correct copy of which is attached hereto as **Exhibit A**) signed by Caven K. Raco on behalf of "CR Design & Construction, Inc."

27.    The Application (Exhibit A) requests the applicant to "Please select all of the coverage(s) you request and provide us the following information" to which only the box next to Professional Liability Insurance is marked, and not for protective indemnity (General Contractors only).

28.    Under Contractors Professional Information, p.1, the Application requests the Applicant to "Please select whether you are applying as a 1. General Contractor (including Design Builders and Construction Managers At Risk,") which was marked "No.". Rather, the Application reflects that "yes" to item 3. Asking "Do you self-perform or subcontract design professional services?"

29.    In describing and specifying the services in which Defendants would perform, Defendants indicated that they "will provide clients with Design Development sketches."  (Exhibit A, p. 2).

30.    On page 6 of the Application, under the Section in red, large font entitled "Claims Details," the Application asks:

> 1.  Does any person to be insured have knowledge or information of any act, error, or omission which might reasonably be expected to give rise to a claim against him/her, including but not limited to professional liability, general liability, or contractors pollution liability?

As to this question, the application is marked "No", and the section following asking "If yes, please explain:" is left blank.

31.     Likewise, as to the following question on the same page, the Application requests:

2.      After inquiry, have any liability claims been made against any proposed Insured(s) during the past ten (10) years?

As to this question, the application is marked "No", and the following asking "If yes, please explain:" is left blank.

32.   The Application then provides in bold-face type, the following:

If yes to any of the claims details questions above, please specify details below and/or submit additional information, including loss runs if applicable.

Details of Claim: Please include the date of claim, parties to the claim, and current status of the claim, in addition to the details of the claim:

Please note: It is agreed that if such knowledge or information exists, any claim based on, arising from, or in any way related to such error, misstatement, misleading statement, act, omission, neglect, or breach of duty of which there is knowledge or information will be excluded from coverage under insurance being applied for.

33.   The Application on p. 6 also provides that:

**APPLICATION DISCLOSURES:**

If there is any material change in the answers to the questions in this Application before the proposed policy inception date, you must notify us in writing. In such case, we have the right to cancel, withdraw, or modify any outstanding quote for insurance coverage or any policy that may have been issued.

34.     As part of the Application Disclosure section, the Application states that:

The undersigned, as your authorized representative or agent, declares to the best of their knowledge and belief and after reasonable inquiry, that the statements made in this Application are true, accurate, and complete. The undersigned agrees that we will rely on this Application in issuing any insurance policy providing the requested coverage, and that this Application will form the basis of any such insurance policy.

/ / /

35.   The Application then further alerts the applicant(s) that:

> **NOTICE TO APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

36.   On September 29, 2022, Mr. Raco signed the application and caused it to be submitted for application for insurance.

37.   In preparing, completing, and signing the Application on behalf of Defendants, Mr. Raco did not disclose any information as relating to the Yick Home Project, the Taylor Home Project, or any other project.

## THE LLOYD'S POLICY

38.   On or about October 10, 2022, Tony Huynh, a professional liability broker with Jencap Specialty Insurance Services, acting on behalf of Defendants, provided the Application via email to a general inbox for CFC Underwriting Limited. Upon review of the application, a proposal with respect to the terms was conveyed on October 11, 2022, requesting additional information and confirmation of certain conditions.  On November 9, 2022, Mr. Huynh, on behalf of Defendants, confirmed the applicant met the conditions and requested that coverage be placed.

39.   Based upon the information and representations made in the Application by Defendants and their agents and Plaintiffs' reliance thereon, the Coverholder, CFC Underwriting Limited, issued a Policy Certificate and Declaration (True and correct copies of the Policy Certificate and Declarations are attached hereto as **Exhibit B**) with respect to various coverages being provided as referenced therein and itself as claims

manager, using wording for Design and Construction (US) v.2.2 (a true and correct of which is attached hereto as **Exhibit C**).

40.    The Lloyd's Policy was effective from 9 November 2022 to 9 November 2023. (Exhibit B).

41.    The named insured for the Lloyd's Policy was identified as "CR Design and Construction Inc". (Exhibit B).

42.    Among the insuring clauses of the Lloyd's Policy, Insuring Clause 1 (entitled Professional Liability) provides as follow:

**SECTION A: ERRORS AND OMISSIONS**

**We** agree to pay on **your** behalf all sums which **you** become legally obliged to pay (including liability for claimants' costs and expenses) as a result of any **claim** first made against **you** during the **period of the policy** or any applicable optional extended reporting period arising out of **your business activities** for any:

a.    negligent act, error, omission, misstatement or misrepresentation;

b.    defamation, including but not limited to libel, slander, trade libel, product disparagement, injurious falsehood, emotional distress or outrage based on harm to the character or reputation of any person or entity;

c.    loss or damage to any documents in paper format in **your** care, custody or control; or

d.    other act, error or omission giving rise to civil liability.

/ / /

/ / /

/ / /

43.    The Lloyd's Policy defines that "**business activities**" means:

> the supply by you or on your behalf of the services performed in the capacity of an architect, engineer, landscape architect, project manager, construction manager, owner's representative, interior designer, design consultant, program manager, environmental consultant, construction consultant, forensic consultant including associated technology services.

(Exhibit C, at p. 8).

44.    However, "**business activities**" does **not** include any **construction activities**.  (Exhibit C at p. 8).

45.    Under the terms, paragraph 10, on page 9, "**construction activities**" means:

> any construction activities performed by **you** or on **your** behalf, including construction, erection, fabrication, installation, assembly, manufacture, demolition, dismantling, drilling, excavation, dredging and other manual activities.

46.    The terms of the Lloyd's Policy also define that "**Claim**" means

a.    a written demand for compensation;

b.    a written request for a retraction or a correction;

c.    a threat or initiation of a lawsuit; and

d.    in respect of **INSURING CLAUSES 1** (**SECTION E** only) and **3** (**SECTION A** only), a regulatory investigation.

(Exhibit C at p. 8).

47.    The terms of the Lloyd's Policy also contain a number of exclusions, for which Plaintiffs are not required and will not make any payment, including but not limited to:

*6.*    **Workmanship**
arising directly out of any physical workmanship in manufacture, fabrication, construction, erection, installation, assembly, alteration, servicing, remediation, repair, demolition or

disassembly (including any materials, parts or equipment furnished in connection therewith) by you or on your behalf.

. . .

*22.*  **Breach of contract**

arising directly out of any breach of contract

. . .

*33.* **Known claims and circumstances**

arising out of any actual or suspected cyber event, claim or circumstance which might give rise to a claim under this Policy of which a senior executive officer was aware of, or ought reasonably to have been aware of, prior to the continuity date, including any claim or circumstance notified to any other insurer.

. . .

*39.*  **Other insurance**

for which you are entitled to indemnity under any other insurance except for:

a.  any additional sum which is payable over and above the other insurance where that insurance has been declared to us; or

b.  any contribution that we are obliged to make by law and that contribution will be in proportion to the indemnity available under the Policies.

. . .

*47.*  **Retroactive date**

in respect of INSURING CLAUSES 1 and 2, arising out of any actual or alleged act, error or omission committed on or before the retroactive date, or any related or continuing acts, errors or omissions where the act, error or omission was first committed or alleged to have been first committed on or before the retroactive date.

(Exhibit C, pp. 13-20).

48.     The terms of the Lloyd's Policy define "**Retroactive date**" to mean "the retroactive date stated in the Declarations page," which in this case is indicated as "09 Nov. 2022."  (Exhibit C at p. 12 & Exhibit B)

/ / /

/ / /

49.    In addition, the terms provide that as a condition of coverage:

**4. Application warranty**

**You** agree that all statements made by **you** in the application form, including any renewal application form, and any supplemental materials **you** have supplied in support of the application for insurance, are **your** agreements and representations to us and the Policy is issued in reliance upon that information. The misrepresentation or non-disclosure of any matter by **you** or **your** agent will render this Policy null and void and relieve **us** from all liability under this Policy.

(Exhibit C at p. 24).

## THE UNDERLYING CLAIM(S)

50.    On or about August 14, 2023, Defendants provided notice of claims with respect to the Yick Home Project with respect to defective construction work, including providing a Notice of Contractor Default with Architectural and Engineering Reports Confirming Default, Building Inspector Report for Inspection completed October 22, 2022, and Claimants' Narrative Summary of Claim to Island Insurance. No litigation had been commenced between the parties but after a mediation to try to resolve the dispute, Mr. Yick demanded arbitration seeking $2,042,539.00 in damages with further damages pending along with attorney fees and costs.  Mr. Yick alleges among other things that Defendants breached the construction contract and Defendants failed to adhere to the statutory requirement under Hawaii Contractors Law, namely HRS § 444-25.5 and Section 16¬77-80 of the Hawaii Administrative Code and is also in violation of Unfair and Deceptive Trade Practices Act, under HRS Chapter 480.

51.    While reserving all rights, Plaintiffs agreed to defend Defendants subject to further investigation and to recoup defense expenses under applicable law.

## RESCISSION OF THE LLOYD'S POLICY

52.    In the course of investigating the claims and allegations set forth above, Plaintiffs became aware of the material misrepresentations, or concealments, or both,

made in the Application, in which Defendants failed to disclose any circumstances, allegations, tolling agreements, or contentions as to any incident which may result in a claim being made, including but not limited to the Yick Home Project, as well as the Taylor Home Project. (Exhibit A).

53.    Defendants had an absolute obligation to disclose in the Application any potential circumstances, allegations, tolling agreements, or contentions as to any and all incident(s) which may result in a claim being made.

54.    The failure of Defendants to disclose in the Application any potential circumstances, allegations, tolling agreements, or contentions as to any incident which may result in a claim being made against constitutes material misrepresentation, or concealments, or both. In addition, the failure to disclose any information concerning the disputes involving the Yick Home Project, the Taylor Home Project, and/or any other disputes would have potentially changed the insurance rates and/or resulted in the denial of coverage by Plaintiffs.  Indeed, upon Defendants' broker submitting a renewal application on or about October 12, 2023 (without being informed of the disputes), Defendants' broker was advised on or about October 27, 2023 that the policy could not be renewed due to the current claim regarding construction defects for a project in Hawai'i.

**<u>FIRST CAUSE OF ACTION</u>**

**(FOR DECLARATORY RELIEF CONFIRMING RESCISSION OF THE LLOYD'S POLICY)**

55.    Plaintiffs refers to and incorporate herein by reference each and every allegation set forth above as if set forth here in full.

56.    There exists a genuine and bona fide dispute and an actual controversy and disagreement between Plaintiffs, on the one hand, and Defendants, on the other

hand, regarding whether Plaintiffs had a duty to defend and/or indemnify Defendants as to disputes arising from the Yick Home Project.

57.    Plaintiffs contend that each have no duty to defend and/or a duty to indemnify Defendants as to the dispute involving the Yick Home Project or any other disputes under the Lloyd's Policy because the Lloyd's Policy is void *ab initio* because the Lloyd's Policy should be rescinded based upon material misrepresentations, or concealments, or both, made in the Application.

58.    Plaintiffs seeks a judicial declaration from this Court confirming that the Lloyd's Policy is rescinded and void *ab initio*.

**SECOND CAUSE OF ACTION**

**(IN THE ALTERNATIVE, RESCISSION OF THE LLOYD'S POLICY)**

59.    Plaintiffs refers to and incorporate herein by reference each and every allegation set forth above as if set forth here in full.

60.    In the alternative, in the event the Court does not declare that the Lloyd's Policy have been rescinded, Plaintiffs seek to rescind the Lloyd's Policy because Defendants made material misrepresentations, or concealments, or both, in the Application under which Defendants were afforded design professional liability insurance coverage, and not coverage for work arising out of construction activities.

61.    Defendants' failure to disclose any dispute, claim or potential claim concerning Defendants' construction activities relating to the Yick Home Project when preparing and signing the Application, as well as separately upon requested further review of the Application, was material to Plaintiffs' consideration of the Application and each's decision to issue the Lloyd's Policy under which Defendants became an insured.

62.     Plaintiffs' relief upon the material misrepresentations, or concealments, or both, in the Application in the issuance of the Lloyd's Policy to their detriment, and as a proximate cause and result of which Plaintiffs have sustained damages.

63.     In addition, the failure to disclose any information concerning the dispute concerning the Yick Home Project by Defendants would have potentially changed the insurance rates and/or resulted in the denial of coverage by Plaintiffs.

64.     Based upon the material misrepresentations and/or concealment in the Application, Plaintiffs request a declaration that the Lloyd's Policy is rescinded and void *ab initio* as to its inception date.

## THIRD CAUSE OF ACTION

## (OTHER DECLARATORY RELIEF – NO COVERAGE UNDER LLOYD'S POLICY)

65.     Plaintiffs refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

66.     Upon conveying to Defendants that there is no duty to indemnify pursuant to the terms of the Lloyd's Policy as to that the dispute involving the Yick Home Project arose before the terms of the policy, the Defendants provided no contention or facts disputing this or that Plaintiffs, under Hawaiʻi law (including but not limited to, *Tri-S Corp. v. W. World Ins. Co.,* 110 Haw. 473, 488 (2006), must disprove any possibility of coverage, but only establish an absence of genuine issue of material fact regarding the question of coverage pursuant to the terms of the policy.

67.     As provided above and in the attached, including Exhibit C, the Lloyd's Policy does not cover event that occurred before the terms of coverage as asserted in the Yick Home Project dispute.

/ / /

/ / /

68.    Furthermore, as the terms of the Lloyd's Policy does not include coverage for construction activities as defined therein, there is no coverage involving the Yick Home Project dispute.

69.    Likewise, there is no coverage under the Lloyd's Policy with respect to workmanship as defined therein and as related to the Yick Home Project.

70.    Alternatively, to the extent that the dispute involving the Yick Home Policy involves a breach of contract, there is no coverage under the Lloyd's Policy.

71.    In addition, the Lloyd's Policy does not cover disputes arising out of any actual or alleged act, error or omission committed on or before the retroactive date, which as alleged above is Nov. 9, 2022, or any related or continuing acts, errors or omissions where the act, error or omission was first committed or alleged to have been first committed on or before the retroactive date.  As further alleged above, there appeared to be issues raised to Defendants in May 2022 that little to no work had been done on the project and other concerns were raised in the Yick Home Project in April 2021 and February 2021 as well.  Furthermore, to the extent that the parties in the Yick Home Project dispute assert that the claims were known to Defendants when making the Application but not disclosed and that that other representations were incomplete, Plaintiffs advised Defendants that not only did they decline coverage but also that they reserved the right to seek rescission of the Lloyd's Policy.

72.    Because Plaintiffs seek to rescind the Lloyd's Policy based on the forgoing and void it *ab initio* due to Defendants' material misrepresentations, or concealments, or both, in applying for the Lloyd's Policy, and/or based on the other terms and exclusion noted above, and without waiving any other terms or exclusions, Plaintiffs had no duty to defend or indemnify Defendants in the Yick Home Project dispute or any other dispute.

/ / /

73.    Because the Lloyd's Policy is rescinded and void *ab initio* due to Defendants' material misrepresentations, or concealments, or both, in applying for the Lloyd's Policy and/or on the reasons as alleged above, Defendants have no standing and/or right to proceed on any claim against Plaintiffs.

74.    Upon information and belief, Defendants may contend otherwise.

75.    An actual controversy exists between Plaintiffs and Defendants.

76.    Plaintiffs seeks a judicial determination that Plaintiffs had no duty to defend or indemnify Defendants with respect to the Yick Home Project because the Lloyd's Policy is rescinded and void *ab initio* due to material misrepresentations, or concealments, or both, in the Application, or alternatively based on the grounds alleged above.

77.    Plaintiffs seeks a declaration that there is no coverage afforded by the Lloyd's Policy for the claims made in the Yick Home Project because the Lloyd's Policy is rescinded and void *ab initio*, or alternatively, on the basis alleged herein.

## FOURTH CAUSE OF ACTION
## (IN THE ALTERNATIVE, NEGLIGENCE AGAINST DEFENDANTS)

78.    Plaintiffs hereby refer to and incorporate herein by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if set forth in full herein.

79.    To the extent the Court does not declare the Lloyd's Policy rescinded or does not rescind the Lloyd's Policy *ab initio*, Plaintiffs plead in the alternative that Defendants were negligent in submitting the Application.

80.    Defendants had a duty to use reasonable care, diligence, and judgment in properly preparing and signing the Application in an honest, truthful and accurate manner and fully divulging in good faith to Plaintiffs all facts within their knowledge that were material to the contract which Plaintiffs had no means of ascertaining, such

duty continuing after the Application was originally submitted, including but not limited to subsequent inquiries made to Defendants for review.

81.    Defendants had a duty not to defraud Plaintiffs.

82.    Defendants submitted an Application to Plaintiffs with material misrepresentations, or concealments, or both.

83.    Defendants failed to disclose any dispute, claim or potential claim concerning the Yick Home Project or any other project when preparing and signing the Application.

84.    Defendants prepared and signed the Application after Defendants were aware of or should have been aware of disputes arising from the Yick Home Project and failed to disclose it in the Application.

85.    Defendants intentionally, carelessly, and/or negligently failed to prepare and sign the Application by failing to fully and truthfully divulge to Plaintiffs all the material information available to Defendants when originally submitting the Application and/or further review of it.

86.    Plaintiffs relied upon the material misrepresentations and/or concealments made in the Application to issue the Lloyd's Policy where either the insurance premiums would have been higher, or the Lloyd's Policy would not have been issued if the true facts were known.

87.    As a proximate result of Defendants' making material misrepresentations, or concealments, or both, in the Application, Plaintiffs have suffered damages in an amount to be determined at trial.

/ / /

/ / /

/ / /

/ / /

## FIFTH CAUSE OF ACTION

## (UNJUST ENRICHMENT)

88.    Plaintiffs hereby refer to and incorporate herein by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if set forth in full herein.

89.    Plaintiffs were never obligated to pay the amounts incurred in defending Defendants in dispute involving the Yick Home Project.

90.    Plaintiffs reserved their right to seek reimbursement from Defendants for defense payments that Plaintiff made, but never owed, in connection with the Yick Home Project.

91.    Defendants would be unjustly enriched by Plaintiffs' payment of defense fees as to the Yick Home Project

92.    Plaintiffs are entitled to reimbursement for all defense payments Plaintiffs paid on Defendants' behalf under the Policy, plus pre-judgment interest at the legal rate.

## PRAYER FOR RELIEF

93.    WHEREFORE, Plaintiffs respectfully requests that this Court enter an order for the following judgment and relief:

a.    For a judicial declaration confirming that the Lloyd's Policy issued to Defendants is rescinded and rendered void *ab initio*;

b.    In addition, that Plaintiffs have no obligations under the Lloyd's Policy to defend and indemnify Defendants, or any of their agents, assignees, including, but not limited to, any and all disputes involving the Yick Home Project.

/ / /

/ / /

c.   In addition, that Plaintiffs have no obligations under the Lloyd's Policy to defend and indemnify Defendants, or any of their agents, assignees, as to any and all disputes.

d.   For general, incidental, and consequential damages in excess of the jurisdictional minimum of this Court;

e.   For pre- and post-judgment interest;

f.   For costs of this lawsuit, and attorneys' fees incurred herein; and

g.   For all such further relief as this Court deems just and proper.

Respectfully submitted,

DATED: December 27, 2024    WILSON, ELSER, MOSKOWITZ,
                             EDELMAN & DICKER LLP

                         By: _____
                             B. Otis Felder
                             Attorney for Plaintiffs
                         *CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,*
                         *Subscribing to Policy No. PSL0039560201*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was duly served upon the following persons electronically though email on December 27, 2024 as it was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to along with sending a copy of this filing via electronic mail to Ronald Ogomori, Esq. at rogomori@ogomorilaw.com, counsel for Defendant CR-DESIGN & CONSTRUCTION, INC.

Dated: December 27, 2024                 Respectfully Submitted,

WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP

By: */s/ B. Otis Felder*
      B. Otis Felder