WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

B. OTIS FELDER #7834
Otis.Felder@wilsonelser.com
555 S. Flower Street, Suite 2900
Los Angeles, CA 90071
Tel: (213) 330-8844
Fax: (213) 443-5101

Attorneys for Plaintiffs
*CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,*
*Subscribing to Policy No. PSL0039560201*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Subscribing to Policy No. PSL0039560201,<br><br>    Plaintiffs,<br><br>  vs.<br><br>CR-DESIGN & CONSTRUCTION INC., and DOES 1 through 10, inclusive,<br><br>    Defendants. | Civil No. 1:24-cv-00578-JMS-KJM (Declaratory Judgment)<br><br>FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT CR-DESIGN & CONSTRUCTION INC. REGARDING LACK OF INSURANCE COVERAGE |

**FINDINGS AND RECOMMENDATION TO GRANT
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANT CR-DESIGN & CONSTRUCTION INC.
<u>REGARDING LACK OF INSURANCE COVERAGE</u>**

Plaintiffs CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, subscribing to Policy No. PSL0039560201's (hereinafter "Plaintiffs") filed their motion for a default judgment against Defendant CR-DESIGN & CONSTRUCTION INC. (hereinafter "Defendant") on May 30, 2025. ECF No. 14. Defendant was served with a copy of the Complaint and Summons on February 14, 2025. ECF No. 10. Defendant's responsive pleading was due within 21 days after service (i.e. by March 7, 2025). However, no answer or other responsive pleading was filed by Defendant within the prescribed time or since then. Plaintiffs then requested a default be entered against Defendant on March 12, 2025. ECF No. 11. On March 13, 2025, the clerk entered default against Defendant. ECF No. 12. Upon Plaintiffs' Motion for Default Judgment (ECF No. 14) ("Motion") being filed on May 30, 2025, the Court set a hearing for July 17 and briefing schedule along with directing Plaintiffs to provide notice to Defendant. ECF No. 15. Plaintiffs filed a declaration of service as to the Court's order showing it had complied with sending notice to Defendant of the hearing both by mail and e-mail. ECF No. 16. The Court held a hearing on Plaintiffs' Motion on July 16, 2025, noting that three calls were made outside the Courtroom for Defendant without any response and Plaintiffs' counsel represented that he had not received any opposition regarding the motion.

ECF No. 18. After carefully considering the Motion, the pleadings, declarations, exhibits and the record established in these proceedings, the Court FINDS AND RECOMMENDS that the district court GRANT the Motion.

## I.    **BACKGROUND**

In considering the underlying facts in support of Plaintiffs' Motion regarding a lack of insurance coverage and the lack of opposition by Defendant, "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." F.R.C.P. Rule 8(b)(6); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."), citing *Pope v. United States*, 323 U.S. 1, 12 (1944); *Flaks v. Koegel*, 504 F.2d 702, 707 (2nd Cir. 1974).

As alleged by Plaintiffs' Complaint and which Defendant did not deny, in or around March 16, 2020, Mr. Robert Yick ("Mr. Yick") signed a contract with Defendant to build a custom retirement house in Kauai ("Yick Home Project"). Complaint at ¶ 17. ECF No. 1. Defendant obtained a construction bond from Island Insurance for the Yick Home Project. Mr. Yick asserted that numerous issues arose during construction. Complaint at ¶¶ 15-24. *See also* Felder Decl., ¶9 & Exhibit A, thereto (ECF No. 14-2 & ECF No. 14-3). These issues included but were not limited

to "1) repeated requests for early draws despite work not meeting draw standards, 2) changing existing building materials and installation dimension requirements, 3) failure to arrange and pay subcontractors despite subcontractor allowances included in the Agreement, 4) failure to build per updated and approved building plans, 5) improper installation, 6) using cheaper materials in the build, and 7) numerous change order requests that materially altered aspects of the build. Most notably, CR Design was to build off unapproved building plans, and outdated architectural sheets that did not reflect the updated conditions. See also Felder Decl., ¶9 & Exh. A, thereto.

### A.    The Insurance Application

After several of the issues arose concerning the Yick Home Project, Defendant, through its insurance broker, submitted an Application for insurance on September 29, 2022 signed by Caven K. Raco on behalf of "CR Design & Construction, Inc." Complaint at ¶ 26 & Exh. A thereto (ECF No. 1-1).

The Application requests the applicant to "Please select all of the coverage(s) you request and provide us the following information" to which only the box next to Professional Liability Insurance is marked, and not for protective indemnity (General Contractors only). Under Contractors Professional Information, p.1, the Application requests the Applicant to "Please select whether you are applying as a 1. General Contractor (including Design Builders and Construction Managers At

Risk,") which was marked "No." Rather, the Application reflects that "yes" to item

3. Asking "Do you self-perform or subcontract design professional services?" In

describing and specifying the services in which Defendant would perform,

Defendant indicated that it "will provide clients with Design Development

sketches." <u>Complaint</u>, ¶¶ 27-29 & Exh. A thereto. On page 6 of the Application,

under the Section in red, large font entitled "Claims Details," the Application further

asks:

> 1. Does any person to be insured have knowledge or information of
> any act, error, or omission which might reasonably be expected to
> give rise to a claim against him/her, including but not limited to
> professional liability, general liability, or contractors pollution
> liability?

As to this question, the application is marked "No", and the section following asking

"If yes, please explain:" is left blank.

Likewise, as to the following question on the same page, the Application

requests:

> 2.     After inquiry, have any liability claims been made against
> any proposed Insured(s) during the past ten (10) years?

As to this question, the application is marked "No", and the following asking "If yes,

please explain:" is left blank. The Application then provides in bold-face type,

inquiry as to claim details noting that if such knowledge and information exists and

information is not provided, then the claim will be excluded from coverage. The

Application on p. 6 also provides that:

APPLICATION DISCLOSURES:

If there is any material change in the answers to the questions in this Application before the proposed policy inception date, you must notify us in writing. In such case, we have the right to cancel, withdraw, or modify any outstanding quote for insurance coverage or any policy that may have been issued.

As part of the Application Disclosure section, the Application states that:

The undersigned, as your authorized representative or agent, declares to the best of their knowledge and belief and after reasonable inquiry, that the statements made in this Application are true, accurate, and complete. The undersigned agrees that we will rely on this Application in issuing any insurance policy providing the requested coverage, and that this Application will form the basis of any such insurance policy.

The Application then further alerts the applicant(s) that:

NOTICE TO APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

On September 29, 2022, Mr. Raco signed the Application and caused it to be submitted for application for insurance. In preparing, completing, and signing the Application on behalf of Defendant, Mr. Raco did not disclose any information as

relating to the Yick Home Project or any other project. <u>Complaint</u> at ¶¶ 36-37 & Exh. A, thereto.

      B.    *The Lloyd's Policy*

On or about October 10, 2022, Tony Huynh, a professional liability broker with Jencap Specialty Insurance Services, acting on behalf of Defendant, provided the Application via email to a general inbox for CFC Underwriting Limited. <u>Complaint</u> at ¶¶ 38-39. Upon review of the application, a proposal with respect to the terms was conveyed on October 11, 2022, requesting additional information and confirmation of certain conditions. On November 9, 2022, Mr. Huynh, on behalf of Defendant, confirmed the applicant met the conditions and requested that coverage be placed. Based upon the information and representations made in the Application by Defendant and its agents and Plaintiffs' reliance thereon, the Cover holder, CFC Underwriting Limited, issued a Policy Certificate and Declaration with respect to various coverages being provided as referenced therein and itself as claims manager. <u>Complaint</u> at ¶¶ 38-39.

The Lloyd's Policy was effective from 9 November 2022 to 9 November 2023. The named insured for the Lloyd's Policy was identified as "CR Design and Construction Inc". See Exhibit B (<u>Certificate & Declarations</u>) to <u>Complaint</u> (ECF No. 1-2) & Exhibit C (<u>Policy Wordings</u>) (ECF No. 1-3). Among the insuring clauses

of the Lloyd's Policy, Insuring Clause 1 (entitled Professional Liability) provides as

follow:

SECTION A: ERRORS AND OMISSIONS

We agree to pay on your behalf all sums which you become legally obliged to pay (including liability for claimants' costs and expenses) as a result of any claim first made against you during the period of the policy or any applicable optional extended reporting period arising out of your business activities for any:

a.    negligent   act,   error,   omission,   misstatement   or misrepresentation;

b.    defamation, including but not limited to libel, slander, trade libel, product disparagement, injurious falsehood, emotional distress or outrage based on harm to the character or reputation of any person or entity;

c.    loss or damage to any documents in paper format in your care, custody or control; or

d.    other act, error or omission giving rise to civil liability.

The Lloyd's Policy defines that "business activities" means:

the supply by you or on your behalf of the services performed in the capacity of an architect, engineer, landscape architect, project manager, construction manager, owner's representative, interior designer, design consultant, program manager, environmental consultant, construction consultant, forensic consultant including associated technology services.

However, "business activities" does not include any construction activities.

8

Complaint at ¶¶ 42-44 & Exhibit C. Under the terms, paragraph 10, on page 9, "construction activities" means:

> any construction activities performed by you or on your behalf, including construction, erection, fabrication, installation, assembly, manufacture, demolition, dismantling, drilling, excavation, dredging and other manual activities.

Id.

The terms of the Lloyd's Policy also define that "Claim" means

    a.    a written demand for compensation;

    b.    a written request for a retraction or a correction;

    c.    a threat or initiation of a lawsuit; and

    d.    in respect of INSURING CLAUSES 1 (SECTION E only) and 3 (SECTION A only), a regulatory investigation.

Id. The terms of the Lloyd's Policy also contain a number of exclusions, for which Plaintiffs are not required and will not make any payment, including but not limited to:

> *6.*    Workmanship
> arising directly out of any physical workmanship in manufacture, fabrication, construction, erection, installation, assembly, alteration, servicing, remediation, repair, demolition or disassembly (including any materials, parts or equipment furnished in connection therewith) by you or on your behalf.
> . . .
> *22.*    Breach of contract
> arising directly out of any breach of contract
> . . .
> *33.* Known claims and circumstances

9

arising out of any actual or suspected cyber event, claim or circumstance which might give rise to a claim under this Policy of which a senior executive officer was aware of, or ought reasonably to have been aware of, prior to the continuity date, including any claim or circumstance notified to any other insurer.

. . .

*39.* Other insurance

for which you are entitled to indemnity under any other insurance except for:

a.    any additional sum which is payable over and above the other insurance where that insurance has been declared to us; or

b.    any contribution that we are obliged to make by law and that contribution will be in proportion to the indemnity available under the Policies.

. . .

*47.* Retroactive date

in respect of INSURING CLAUSES 1 and 2, arising out of any actual or alleged act, error or omission committed on or before the retroactive date, or any related or continuing acts, errors or omissions where the act, error or omission was first committed or alleged to have been first committed on or before the retroactive date.

*Id*. The terms of the Lloyd's Policy define "Retroactive date" to mean "the retroactive date stated in the Declarations page," which in this case is indicated as "09 Nov. 2022." In addition, the terms provide that as a condition of coverage:

4. Application warranty

You agree that all statements made by you in the application form, including any renewal application form, and any supplemental materials you have supplied in support of the application for insurance, are your agreements and representations to us and the Policy is issued in reliance upon that information. The misrepresentation or non-disclosure of any matter by you or your

agent will render this Policy null and void and relieve us from all
liability under this Policy.

C.    *Alternative Dispute Resolution Regarding the Yick Home Project
      Dispute Between Mr. Yick and Defendant*

Mr. Yick demanded an arbitration with Defendant regarding the Yick Home

Project. See Exhibit A to Felder Decl. In Mr. Yick's demand for arbitration, Mr.

Yick and his wife acknowledged that "On August 11, 2022, Claimants notified

Island Insurance they were declaring a contractor default under the Performance

Bond." "Claimants formally terminated CR Design on November 7, 2022." Then on

"November 17, 2022, this firm, Claimants sent a written letter to both CR Design,

and Island Insurance declaring a Contractor Default under the bond. On September

6, 2023, Claimants sent CR Design a 'Notice of Claim' letter pursuant to the

Contractors Repair Act." In Mr. Yick's arbitration demand, Claimants specify that

their agreement with the insured fails to adhere to the statutory requirement under

Hawaii Contractors Law, namely HRS § 444-25.5 and Section 16-77-80 of the

Hawaii Administrative Code and is also in violation of Unfair and Deceptive Trade

Practices Act, under HRS Chapter 480. Felder Decl. ¶ 9 & Exh. A thereto.

D.    *The Underlying Action*

On or about December 27, 2024, Plaintiffs filed this action against Defendant

asserting the Court has original jurisdiction pursuant to 28 U.S.C. §§ 1332 and 2201,

et seq. and Fed. R. Civ. P, Rule 57, to resolve an actual controversy

between the parties as set forth herein. Complaint at ¶ 11 (ECF No. 1). Plaintiffs

alleged that there is complete diversity between the parties in that the Plaintiffs are

all citizens of the United Kingdom in that their principal place of business is located

there and none are citizens of Hawaiʻi and each of the Defendants is a citizen of the

State of Hawaiʻi. *Id.* The Complaint further alleges that the amount in controversy

exceeds $75,000, exclusive of interest and costs, both in the aggregate and as to each

individual syndicate's potential several liability noted above in subscribing to the

policy. *Id.* Plaintiffs also alleged that venue in this Court is proper pursuant to 28

U.S.C. § 1391(b)(1) in that all defendants are residents of the State of Hawaiʻi and

at least one defendant resides in this jurisdictional district. Complaint at ¶ 12. Venue

is also proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events

giving rise to the claim occurred here. *Id*. The Complaint also contains the causes of

actions for Declaratory Relief Confirming Recission of the Lloyd's Policy,

Recission of the Lloyd's Policy, Other Declaratory Relief-No Coverage Under

Lloyd's Policy, Negligence and Unjust Enrichment. *Id. See also* Felder Decl., ¶ 4.

     As noted above, Defendant was served with a copy of the Complaint and

Summons on February 14, 2025. ECF No. 10. Defendant's responsive pleading was

due within 21 days after service (i.e. by March 7, 2025). However, no answer or

other responsive pleading was filed by Defendant within the prescribed time or since

then. Plaintiffs then requested a default be entered against Defendant on March 12,

2025. ECF No. 11. On March 13, 2025, the clerk entered default against Defendant.

ECF No. 12. Upon Plaintiffs' Motion being filed on May 30, 2025, the Court set a

hearing for July 17 and briefing schedule along with directing Plaintiffs to provide

notice to Defendant. ECF No. 15. Plaintiffs filed a declaration of service as to the

Court's order showing they had complied with sending notice to Defendant of the

hearing both by mail and e-mail. ECF No. 16. No opposition to Plaintiffs' Motion

was filed, and Defendant failed to appear at the hearing.

## III.   DISCUSSION

### A.    Standard for Default Judgment and Jurisdiction

Generally, a default judgment may be entered for a plaintiff if a defendant has

defaulted by failing to appear and the plaintiff's claim is for a sum certain or for a

sum which can by computation be made certain. Fed. R. Civ. P. 55(b)(1), (2). The

granting or denial of a motion for default judgment is within the discretion of the

court. *Haw. Carpenters Trust Funds v. Stone*, 794 F.2d 508, 512 (9th Cir. 1986)

(applying abuse of discretion in reviewing district court's decision to enter default

judgment). Default judgments are ordinarily disfavored, and cases should be decided

on their merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir.

1986). The court should consider the following factors in deciding whether to grant

a motion for default judgment:

(1)    the possibility of prejudice to the plaintiff;

13

(2)    the merits of plaintiff's substantive claim;

(3)    the sufficiency of the complaint;

(4)    the sum of money at stake in the action;

(5)    the possibility of a dispute concerning material facts;

(6)    whether the default was due to excusable neglect; and

(7)    the strong public policy underlying the Federal Rules of Civil
         Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.

As noted above, on default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted) (quoting *Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir. 1977)). "With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (*citing Geddes*, 559 F.2d at 560). In this respect, "[t]he district court is not required to make detailed findings of fact." *Fair Hous.*, 285 F.3d at 906 (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990)).

Before considering the merits of default judgment and "[t]o avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the

first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). First, Plaintiffs are all

citizens of the United Kingdom; none are citizens of Hawaii. Defendant is a Hawaii

business entity, and it and its owner are citizens of the State of Hawaii. The Court

has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete

diversity of citizenship between the parties, and the amount in controversy herein

exceeds $75,000. Second, the Court has personal jurisdiction over Defendant as a

Hawaii citizen. Personal jurisdiction can be acquired by personal service or by a

defendant's "minimum contacts" with the jurisdiction. *Cripps v. Life Ins. Co. of N.
Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Burnham v. Superior Court of Cal.*,

495 U.S. 604 (1990). Here, as set forth in the Complaint and Proof of Service,

service was made on Defendant personally in Hawaii. See ECF No. 10.

### B.    Lack of Coverage

It is well settled in Hawai'i, as is the case in other states, that "[a]n insurance

contract must be construed according to the *entirety* of its terms and conditions under

the policy." *Barabin v. AIG Haw. Ins. Co.*, 82 Haw. 258, 263, 921 P.2d 732, 737

(1996) (other citation omitted) (citing HRS § 431:10-237). Accordingly, courts must

"respect the plain terms of the policy and not create ambiguity where none exists."

*Id.* at 263.

With respect to an insurer's duty to indemnify the insured pursuant to the

Policy, it is not required under Hawai'i law to disprove any possibility that its insured

might be liable for a claim asserted in the underlying lawsuits. *Tri-S Corp. v. W. World Ins. Co*., 110 Haw. 473, 488, 135 P.3d 82, 97 (2006) (citation omitted). Rather, without reference to what the eventual outcome of the underlying lawsuits might actually be, an insurer is required only to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policy. *Id.* As discussed below, there is no coverage under the Policy for five reasons, any of which alone would be sufficient for a finding of a lack of coverage.

1.    *Defendant's Claim Arises Before the Retroactive Date of the Policy*

Here, Mr. Yick asserts in the arbitration demand that "Claimants formally terminated CR Design on **November 7, 2022**." Exh. A to Felder Decl. (emphasis added). The terms of the Lloyd's Policy define "Retroactive date" to mean "the retroactive date stated in the Declarations page," which in this case is indicated as "09 Nov. 2022." Therefore, Defendant's claim regarding the Yick Home Project falls outside of the coverage period of the Lloyd's Policy.

2.    *The Claim Arises Out of Construction Activities Rather than Business Activities*

Here, the Lloyd's Policy provides coverage for claims arising out of the insureds "business activities," which are defined as professional services such as architecture, engineering, and design consulting. However, the claims made by Mr.

Yick primarily involve allegations of improper construction practices, including failure to build according to approved plans, improper installation, and use of cheaper materials. These activities fall under the Policy's definition of "construction activities," which include physical construction, erection, and installation, and are not covered under the Policy's definition of "business activities." Therefore, the Defendant's claim fall outside the scope of coverage under the Policy.

3.    *The Workmanship Exclusion Precludes Coverage*

Here, the Lloyd Policy contains an exclusion for claims "arising directly out of any physical workmanship in manufacture, fabrication, construction, erection, installation, assembly, alteration, servicing, remediation, repair, demolition or disassembly." The claims made by Mr. Yick, including allegations of improper installation, use of cheaper materials, and failure to build according to approved plans, directly arise out of physical workmanship in construction and installation. As such, Defendant's claim is explicitly excluded from coverage under the workmanship exclusion.

4.    *The Breach of Contract Exclusion Precludes Coverage*

In this case, the Lloyd's Policy contains an exclusion for claims "arising directly out of any breach of contract." Mr. Yick's claims include allegations of failure to arrange and pay subcontractors, failure to meet draw standards, and numerous change order requests that materially altered the build. These allegations

17

are rooted in the insureds contractual obligations and therefore fall squarely within the breach of contract exclusion.

        5.    *The Known Claims and Circumstances Exclusion Precludes Coverage*

Here, as set forth in the Complaint, Defendant, through its representative Caven K. Raco, submitted an insurance application on or about September 29, 2022, which contained material misrepresentations. The application falsely indicated that Defendant had no knowledge of any act, error, or omission that might reasonably be expected to give rise to a claim against it, and that no liability claims had been made against Defendant in the past ten years. These statements were false, as Defendant was aware of significant issues and claims related to its construction projects, including the Yick Home Project. Specifically, On August 11, 2022, Mr. Yick and his wife Laura Liu ("Ms. Liu") notified Island Insurance that they were declaring a contractor default under the bond. On November 7, 2022, Mr. Yick formally terminated Defendant regarding the Yick Home Project.

Therefore, there is no coverage for the claim arising from the Yick Home Project because of Defendant's misrepresentation or non-disclosure in the application.

**C.    *Eitel* Considerations Support Judgment in Favor of Plaintiffs.**

Before a court may rule on an application for default judgment, it must first determine whether the application complies with Federal Rule of Civil Procedure 55

and Local Rules. *Michael Grecco Prods., Inc. v. TrekMovie.com*, 677 F. Supp. 3d 1104, 1107–08 (C.D. Cal. 2023) (citation omitted). Federal Rule of Civil Procedure 55(b) requires a party apply to the court for a default judgment unless the claim is for a sum certain. "The application must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Civil Relief Act (50 U.S.C. §3931) does not apply; and (5) that notice of the application has been served on the defaulting party." *Id.* at 1108.

Here, Plaintiffs satisfied these procedural requirements, as they did not petition for entry of default judgment until after the Clerk entered a default, and provide for the various elements above. <u>Felder Decl.</u>, ¶¶ 7-8. As the procedural requirements are met, "Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment." *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). In considering the relevant factors, default judgment finding a lack of coverage should be entered. *Eitel,* 782 F.2d at 1471-72.

### 1.    *Plaintiffs Will Be Prejudiced Without Default Judgment*

Plaintiffs would suffer prejudice if default judgment were not entered against Defendant. Defendant's failure to participate in this litigation leaves Plaintiffs with

no other recourse than to seek a default judgment. *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (a plaintiff is prejudiced if it would be without other recourse for recovery because the defendant failed to appear or defend against the suit.)

When a defendant refuses to appear in an action, a default judgment is the primary and preferred means by which a Plaintiffs may obtain relief. *Colony Ins. Co. v. Schmid*, EDCV 20-77 JGB (SPx), 2020 U.S. Dist. LEXIS 164505, at *5-6 (C.D. Cal. September 9, 2020) (citing *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding the plaintiff would suffer prejudice absent entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim)). "Absent a default judgment, Defendant will have avoided liability simply by not responding to Plaintiff's action." *Id.* Plaintiffs' only alternatives would be to seek summary judgment (with admissible evidence) or proceed to a one-sided trial, both of which are less inefficient, unnecessary options under the circumstances. *See* Fed. R. Civ. P. 1.

With respect to this particular case where an insurer seeks a declaration of a lack of coverage, it faces potential prejudice if a default is not entered particularly given it also faces continued exposure to liability in an underlying lawsuit or claim. *United Specialty Ins. Co. v. Ghazaryn*, CV-20-04262, 2020 U.S. Dist. LEXIS 222780, at *5-6 (C.D. Cal. Sept. 28, 2020) (citing *Mesa Underwriters Specialty Ins.*

*Co. v. Paradise Skate, Inc.,* 15-cv-01253, 2016 U.S. Dist. LEXIS 190324, 2016 WL 9045622, at *3 (N.D. Cal. Apr. 11, 2016) ("[t]here is potential prejudice where denying default judgment would deny an insurer a judicial determination as to whether it has a duty to indemnify and defend the defendant."). *See also*, *Aspen Ins. UK Ltd. v. Killarney Const. Co*., 11-cv-01294, 2012 U.S. Dist. LEXIS 69925, 2012 WL 1831498, at *2 (N.D. Cal. May 18, 2012).

Here, if a default judgment is not entered against Defendant, it will have avoided liability by refusing to appear. Plaintiffs filed this action for declaratory relief because Defendant filed a claim under the Policy. Thus, Plaintiffs have no other means to obtain relief and would be prejudiced absent a default.

### 2.    *Plaintiffs Have Substantive Bases for Entry of Default Judgment*

As set forth above, there are substantial merits the declaratory relief claim asserted by Plaintiffs in this action. Defendant's application falsely indicated that it had no knowledge of any act, error, or omission that might reasonably be expected to give rise to a claim against it, and that no liability claims had been made against Defendant in the past ten years. Defendant was aware of significant issues and claims related to its construction projects. Specifically, on August 11, 2022, Mr. Yick and Ms. Liu notified Island Insurance that they were declaring a contractor default under the bond. Had Plaintiffs been aware of the disputes involving Defendant in the Yick Home Project, the Lloyd Policy would not have been issued.

21

3.    *The Allegations in the Complaint Are Legally Sufficient for Judgment*

The next factor the Court may consider in evaluating the appropriateness of default judgment is whether the allegations are legally sufficient. As shown above, there are several substantive arguments upon which Plaintiffs can prevail in this action. The allegations in the Complaint are demonstrative of the manner through which Plaintiffs would prevail if Defendant had decided to defend this action.

In this action, Plaintiffs only seeks declaratory relief and non-monetary damages. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a federal court may "declare the rights and other legal remedies" of the parties in a "case of actual controversy." *Heerema Marine Contractors v. Sante Fe Int'l Corp.*, 582 F. Supp. 445, 448 (C.D. Cal. 1984). Declaratory relief is proper where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Declaratory relief is also appropriate when: (1) the "judgment will serve a useful purpose in clarifying or settling the legal relations in issue; and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Fed. Sav. & Lan Assoc. v. Am. Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989) (quoting *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984)).

A presumption exists that a court may hear a declaratory judgment action upon establishing: (1) an actual controversy exists; (2) regarding a matter within federal subject matter jurisdiction. *Ghazaryan*, 2020 U.S. Dist. LEXIS 222780, at *6 (citing *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998)).

"Both the Supreme Court and the Ninth Circuit hold that an actual case or controversy" exists when an insurer brings a "declaratory judgment action regarding its duty to defend and indemnify," even when an "underlying liability action in state court ha[s] not yet proceeded to judgment." *Arch Ins. Co. v. Fontana Union Water Co.*, EDCV 16-1790-VAP (KKx), 2016 U.S. Dist. LEXIS 203163, at *8 (C.D. Cal. December 9, 2016) (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (citing *Md. Cas*, 312 U.S. 270); *see also United Specialty Ins. Co.*, 2020 U.S. Dist. LEXIS 222780, at *7 (sufficiency factor weighed in favor of default judgment in insurance coverage dispute where there was a real legal dispute regarding insurer's duty to defend or indemnify defendant and the court had jurisdiction pursuant to 28 U.S.C. §1332).

Here, as set forth in the Complaint, there exists a genuine and bona fide dispute and an actual controversy and disagreement between Plaintiffs, on the one hand, and Defendant, on the other hand, regarding whether Plaintiffs had a duty to defend and/or indemnify Defendant as to disputes arising from the Yick Home Project. Plaintiffs contend that they have no duty to defend and/or a duty to

indemnify Defendant as to the dispute involving the Yick Home Project or any other disputes under the Lloyd's Policy because the Lloyd's Policy does not cover the claim as discussed above, as well as is void *ab initio* because the Lloyd's Policy based upon material misrepresentations, or concealments, or both, made in the Application. Therefore, Plaintiffs seek a judicial declaration from this Court confirming that there is no coverage. To date, Defendant has not responded to or contested this action.

    4.    *There Is No Sum of Money at Issue, as Plaintiffs Only Seek Declaratory Relief*

The fourth factor balances the "amount of money at stake in relation to the seriousness of the [d]Defendant conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *Bike Builders Bible v. Kewlmetal, Inc.*, SACV 16-01116, 2017 U.S. Dist. LEXIS 183621, at *12-13 (C.D. Cal. Mar. 2, 2017).

Here, the remedy at issue is not monetary but, rather, declaratory relief against Defendant. Declaratory relief can be granted through a Motion for Default Judgment. *Pepsico*, 238 F. Supp. 2d at 1176-77; *see also United Specialty Ins. Co.*, 2020 U.S. Dist. LEXIS 222780, at *7 ("Where the plaintiff's claim is for declaratory relief rather than money damages, . . . courts have found that this factor weighs in favor of granting default judgment." (quoting *Echelon Prop. & Cas. Ins. Co. v. Allstate Med Trans LLC*, 19-cv-98295, 2020 U.S. Dist. LEXIS 104308, 2020 WL 3192432, at *3

(D. Ariz. June 15, 2020)). Thus, this factor also weighs in favor of granting default judgment.

### 5. If The Action Were to Proceed, There Are No Material Facts in Dispute

There are also no material facts in dispute. As noted above, all well-pleaded factual allegations are deemed true, other than those relating to damages. *TeleVideo Sys., Inc.* 826 F.2d at 918. "Because the allegations are taken as true after the clerk enters a default, no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2015). Courts have found that a dispute concerning facts is unlikely where a defendant makes no effort to challenge a complaint. *Evans v. Creditor's Specialty Serv. Inc.,* 15-CV-03355, 2016 WL 730277, 2016 U.S. Dist. LEXIS 23396, at *6 (N.D. Cal. Feb. 24, 2016) ( "The Defendant has made no effort to challenge the complaint; therefore, there is nothing on the record before the Court to suggest a factual dispute or that default was due to excusable neglect."). Plaintiffs demonstrate above how the factual allegations in the Complaint relate to the coverage dispute. Defendant has been served in this action and has refused to appear or assert any defenses. Thus, it is not contesting the facts asserted in the Complaint, and there are no material facts in dispute.

6.    *There Is No Possibility of Excusable Neglect That Led to the Entry of Default*

Defendant is aware of this action and has decided not to respond to the Complaint. Thus, there is no possibility of excusable neglect that led to the default entered. Courts have held that the possibility of excusable neglect is remote when a defendant has been properly served with a complaint. *See Landstar Ranger v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). As such, when a defendant is properly served, the excusable neglect factor weighs in favor of the Plaintiffs. *Colony Ins. Co.*, 2020 U.S. Dist. LEXIS 164505, at *11 (citing *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).

Here, Defendant was properly served with the summons and complaint. Defendant, however, failed to respond to Complaint. Accordingly, there is no possibility that neglect led to the entry of default.

7.    *This Action Is Not One That Warrants a Decision on the Merits*

Decisions on the merits are generally favored over default judgments. When a defendant, however, fails to answer or otherwise challenge an action, a decision on the merits is impracticable. *Hartford Fire Ins. Co. v. Oceans-One Interior Drywall, Inc.*, 16-945-JGB, 2016 U.S. Dist. LEXIS 151509, *12 (C.D. Cal. October 31, 2016). As such, when a plaintiff sufficiently alleges facts supporting its claims, the policy favoring decisions on the merits do not warrant denying a default

judgment. *Id.; see also*, *PepsiCo*, 238 F. Supp. 2d at 1177 (the preference to decide a case on the merits does not preclude a default judgment) (citation omitted).

The Court finds that the totality of the *Eitel* factors weigh in favor of entering default judgment in favor of Plaintiffs and against Defendant. The Court thus FINDS and RECOMMENDS that the district court GRANT Plaintiffs' Motion for Default Judgment (ECF No. 14) as follows:

1.    There is no coverage for Defendant's claims under the Lloyd's Policy; and

2.    Plaintiffs have no obligations under the Lloyd's Policy to defend and indemnify Defendant, or any of its agents, assignees, including, but not limited to, any and all disputes involving the Yick Home Project.

IT IS SO FOUND AND RECOMMENDED.

Dated: Honolulu, Hawaii, August 13, 2025.



Kenneth J. Mansfield
United States Magistrate Judge

*Certain Underwriters at Lloyd's London v. CR-Design & Constr. Inc.*, Civil No. 24-00578 JMS-KJM; Findings and Recommendation to Grant Plaintiffs' Motion for Default Judgment Against Defendant CR-Design & Construction Inc. Regarding Lack of Insurance Coverage